OPINION *Page 2 
{¶ 1} Plaintiffs-Appellants, Cheryl Vaughn and Karen Conrad appeal the March 5, 2008 judgment of the Tuscarawas County Court of Common Pleas, Probate Division to approve the Magistrate's Decision denying Appellants' petitions for dissolution of two testamentary trusts. The following facts give rise to the appeal.
 {¶ 2} Nellie B. Lint was the grandmother of Cheryl Vaughn and Karen Conrad. At the time of her death in 1972, Mrs. Lint was survived by her son, Norman Lint, and her granddaughters. Cheryl Vaughn was twenty-one years and married with two children. Karen Conrad was nineteen years old and did not have children.
 {¶ 3} Mrs. Lint executed a Last Will and Testament dated April 1, 1971. The will established a Testamentary Trust on behalf of each of the Appellants. Specifically, the Will provided as follows with respect to the Appellants' Trusts:
 {¶ 4} "ITEM II. I give and bequeath unto my granddaughter, Cheryl Lynn Vaughan (sic), if living, or if deceased to the issue of her body, the sum of Fifty Thousand ($50,000.00) Dollars, to be held in trust for her use and benefit or for the use and benefit of the issue of her body living at the time of her demise. Said fund to be held in trust by the Reeves Banking and Trust Company, Dover, Ohio, and administered as hereinafter provided.
 {¶ 5} "ITEM III. I give and bequeath unto my granddaughter, Karen Sue Geckler, the sum of Fifty Thousand ($50,000.00) Dollars, if living, or if deceased to the issue of her body living at the time of her demise, or in the event she should die without issue of her body, said trust fund is hereby bequeathed to her sister Cheryl Lynn Vaughan (sic), if living, or if her sister is deceased to the issue of her body living at the *Page 3 
time of her sister's demise. Said sum of Fifty Thousand ($50,000.00) Dollars to be held in trust for her use and benefit by the Reeves Banking and Trust Company, Dover, Ohio, and administered as hereinafter provided.
 {¶ 6} "* * *
 {¶ 7} "ITEM X. The funds set forth it (sic) Item II, III, IV, ITEM IX a, b, and c, shall be held in trust by the Reeves Banking and Trust Company, Dover, Ohio, without giving bond, and shall be paid as follows, it being the intent of my Will that any funds due my son, Norman Kenneth Lint, shall not be held in trust but if he is living at the time of my demise, shall be paid directly to him:
 {¶ 8} "a) The sum of Two Hundred Fifty ($250.00) Dollars monthly to my granddaughter, Cheryl Lynn Vaughan (sic), if living or if deceased the sum of Two Hundred Fifty ($250.00) Dollars to be distributed in equal shares to the issue of her body.
 {¶ 9} "b) The sum of Two Hundred Fifty ($250.00) Dollars monthly to my granddaughter, Karen Sue Geckler, if living or if deceased, the sum of Two Hundred Fifty ($250.00) Dollars to be distributed in equal shares to the issue of her body or in the event she should die without issue of her body, to her sister, Cheryl Lynn Vaughan (sic) if living or if deceased to the issue of the body of her sister living at the time of her sister, Cheryl Lynn Vaughan's (sic) demise."
 {¶ 10} Mrs. Lint's will does not contain any termination provisions for the trusts. Accordingly, each trust will continue to pay $250 per month to each Appellant until her death, then to the children and lineal descendants of the deceased granddaughter in per stirpes distribution — $250 per month divided between the ensuing *Page 4 
beneficiaries/lineal descendants. Because there is no stated termination for the trust, the terms of the trust will continue indefinitely until it must be terminated pursuant to the Rule Against Perpetuities or economic infeasibility.
 {¶ 11} Upon Mrs. Lint's death, her will was admitted to probate. Huntington National Bank, the successor of Reeves Banking and Trust Company, is the successor Trustee of the two testamentary trusts. Per the terms of the trust, the Trustee has paid Appellants as beneficiaries $250.00 per month since 1972.
 {¶ 12} On December 31, 2003, Appellants filed separate motions seeking judicial termination of the testamentary trusts to which Appellee objected. The Tuscarawas County Court of Common Pleas, Probate Division consolidated the separate cases and the matter came before the magistrate for an evidentiary hearing. Appellants testified at the hearing held on September 20, 2007. At the time of the hearing, Ms. Vaughn was fifty-six years old. She had two adult sons and two minor grandchildren. Ms. Vaughn testified that her mother passed away when she was five years old and Mrs. Lint, her grandmother, helped raise her and her sister. When Mrs. Lint passed away, Ms. Vaughn was twenty-one years old. Ms. Conrad testified that she was approximately nineteen years old when Mrs. Lint passed away. At the time of the hearing, Ms. Conrad had three adult sons and two minor grandchildren. Both Ms. Vaughn and Ms. Conrad testified that if the trusts were terminated, they intended to use the corpus of the trusts for retirement investment purposes. The current balance of each trust was approximately $50,000.00 and Appellee had reduced its trustee fees in light of the size of the trusts and the payouts to the beneficiaries. There were no witnesses at the hearing that were present for the drafting of Ms. Lint's will or could testify to Mrs. Lint's *Page 5 
expressed intentions in the drafting of her will. Appellants testified that it was their understanding that Mrs. Lint wanted the payments spread out because the Appellants were young and Mrs. Lint did not want them to spend it all.
 {¶ 13} On October 25, 2007, the magistrate issued a Magistrate's Decision, in which he denied the petitions to terminate the testamentary trusts. He determined pursuant to R.C. 5804.11, that while it was generally agreed that all the beneficiaries had consented to the termination of the trusts, the continuance of the trusts was necessitated by the material purpose of the trusts. The magistrate interpreted the material purpose of the trusts to be that neither Appellant would get the trust balance outright, but to bestow the benefit on the farthest generation possible. The magistrate did reform the trusts to conform to the Rule Against Perpetuities.
 {¶ 14} Both parties filed objections to the Magistrate's Decision. The trial court held a hearing on the parties' objections and on March 5, 2008, overruled the parties' objections and approved the Magistrate's Decision.
 {¶ 15} It is from this decision Appellants now appeal.[1] Appellants raise two Assignments of Error:
 {¶ 16} "I. THE TRIAL COURT ERRED IN NOT TERMINATING THE TRUST UNDER THE OHIO TRUST CODE.
 {¶ 17} "II. THE TRIAL COURT ERRED IN NOT TERMINATING THE TRUST UNDER OHIO COMMON LAW." *Page 6 
 {¶ 18} Appellants argue in their first Assignment of Error the trial court erred in not terminating the testamentary trusts under the Ohio Trust Code. We disagree.
 {¶ 19} It is well settled that the interpretation of wills is a question of law, and, thus, when determining a testator's intent and the terms of her testamentary trust, we apply a de novo standard of review.Summers v. Summers, (1997), 121 Ohio App.3d 263, 267, 699 N.E.2d 958
citing McCulloch v. Yost (1947), 148 Ohio St. 675, 677, 36 O.O. 274,275, 76 N.E.2d 707, 708; Leyshon v. Miller (Oct. 20, 1994), Washington App. No. 93CA37, unreported, 1994 WL 585743. We will review Appellants' Assignments of Error pursuant to this standard.
 {¶ 20} The parties agree that a recently enacted provision of the Ohio Trust Code is relevant to the disposition of this matter. R.C. 5804.11, effective January 1, 2007, is entitled, "Modification or termination of noncharitable irrevocable trust by consent." The statute is analogous to § 411 of the Uniform Trust Code. R.C. 5804.11 states in pertinent part:
 {¶ 21} "(B) A noncharitable irrevocable trust may be terminated upon consent of all of the beneficiaries if the court concludes that continuance of the trust is not necessary to achieve any material purpose of the trust. A noncharitable irrevocable trust may be modified, but not to remove or replace the trustee, upon consent of all of the beneficiaries if the court concludes that modification is not inconsistent with a material purpose of the trust. * * *"
 {¶ 22} The parties agree that all of the beneficiaries have consented to the termination of the trusts. The issue before the trial court and this Court is the determination of the material purpose of the trusts. As Appellants noted in their brief, *Page 7 
the analysis of the modification or termination of a noncharitable irrevocable trust pursuant to R.C. 5804.11 or § 411 is a matter of first impression.
 {¶ 23} The official comment to § 411 provides us with some guidance as to the determination of whether the trust no longer serves a material purpose. It states, "[t]he requirement that the trust no longer serve a material purpose before it can be terminated by the beneficiaries does not mean that the trust has no remaining function. In order to be material, the purpose remaining to be performed must be of some significance:
 {¶ 24} "Material purposes are not readily to be inferred. A finding of such purpose generally requires some showing of a particular concern or objective on the part of the settlor, such as a concern with regard to the beneficiary's management skills, judgment, or level of maturity. Thus, a court may look for some circumstantial or other evidence indicating that the trust arrangement represented to the settler more than a method of allocating the benefits of property among multiple beneficiaries, or a means of offering to the beneficiaries (but not imposing on them) a particular advantage. Sometimes, of course, the very nature or design of a trust suggests its protective nature or some other material purpose."
 {¶ 25} We find the last sentence of the official comment to be pertinent to the issue presented in this case and in accord with the magistrate's determination of the material purpose of the trusts and the trial court's approval of the same. The very nature or design of these trusts suggests their protective nature or material purpose. As stated within the magistrate's decision, "the trust patently shows that the settlor didn't want any single individual to ever get the trust corpus." *Page 8 
 {¶ 26} Items II and III state the amount of money bequeathed to each granddaughter specifically to be held in trust for each granddaughter. The trusts then specifically set the terms for the administration of the trusts. Item X(a) states as to Ms. Vaughn, "[t]he sum of Two Hundred Fifty ($250.00) Dollars monthly to my granddaughter, Cheryl Lynn Vaughan (sic), if living or if deceased the sum of Two Hundred Fifty ($250.00) Dollars to be distributed in equal shares to the issue of her body." As to Ms. Conrad, the trust states, "[t]he sum of Two Hundred Fifty ($250.00) Dollars monthly to my granddaughter, Karen Sue Geckler, if living or if deceased, the sum of Two Hundred Fifty ($250.00) Dollars to be distributed in equal shares to the issue of her body * * *."
 {¶ 27} The trusts do not contain any language as to the termination of the trusts, in fact necessitating reformation by the magistrate for compliance with the Rule Against Perpetuities. The trusts do not designate who should receive the trust corpus, if at all. Appellants opined at the evidentiary hearing that Mrs. Lint intended the monthly distributions solely because of the Appellants' youth at the time of her death, but we find the will is silent as to this interpretation.
 {¶ 28} In the case of Townsend's Ex'rs. v. Townsend (1874),25 Ohio St. 477, the Ohio Supreme Court set forth four rules to be followed when construing the language of a will to determine the testator's intent. These rules are as follows: (1) In the construction of a will, the sole purpose of the court should be to ascertain and carry out the intention of the testator; (2) Such intention must be ascertained from the words contained in the will; (3) The words contained in the will, if technical, must be taken in their technical sense, and if not technical, in their ordinary sense, unless it appear[s] *Page 9 
from the context that they were used by the testator in some secondary sense; (4) All the parts of the will must be considered together, and effect, if possible, given to every word contained in it. Id.
at paragraphs one, two, three and four of the syllabus. Knight v.Knight (Oct. 11, 2000), Guernsey App. No. 00 CA 10.
 {¶ 29} We find the design of these trusts illustrates the material purpose of the trusts, that Appellants and their issue of their bodies receive a secure monthly income as long as the corpus of the trust remains. The design of these trusts is comparable to an annuity. Appellants are the primary beneficiaries of this income, but per the terms of the trust, not the sole beneficiaries. The continuance of the trusts is necessary to achieve Mrs. Lint's material purpose of these trusts.
 {¶ 30} We find the trial court did not err in approving the magistrate's decision to deny the termination of the trusts. Accordingly, Appellants' first Assignment of Error is overruled.
 II. {¶ 31} Appellants argue in their second Assignment of Error that the trial court erred in not terminating the trusts under Ohio common law. In support of their argument, Appellants cite as follows:
 {¶ 32} "A trust may be ordered terminated if all beneficiaries consent to its termination, and if the trust instrument does not by express terms prohibit its termination." Carnahan v. Johnson (1998),127 Ohio App.3d 195, 201.
 {¶ 33} In Carnahan, supra, the 12th District cites this Court's holding in In re Grant (Sept. 26, 1983), Stark App. No. CA-6122. We further held in that case, "[f]urthermore, a trust should be terminated if all beneficiaries consent to its termination *Page 10 
unless such termination would defeat a material purpose of the trust."In re Grant, supra.
 {¶ 34} Based upon our determination in the first Assignment of Error that termination of these trusts would defeat the material purpose of the trusts, we find Appellants' second Assignment of Error to be not well taken and overrule the same.
 {¶ 35} Accordingly, the judgment of the Tuscarawas County Court of Common Pleas, Probate Division, is affirmed.
 Delaney, J. Gwin, P.J. and Wise, J. concur. *Page 11 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Tuscarawas County Court of Common Pleas, Probate Division, is affirmed. Costs assessed to Appellants.
[1] Appellee filed a cross-appeal but dismissed its appeal on September 17, 2008. *Page 1